E-FILED
Monday, 01 March, 2021  04:33:38 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHARLES M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-1178-JES-JEH |
| | ) | |
| COMM'R OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This matter is now before the Court on Plaintiff's Motion (Doc. 11) for Summary Judgment and Memorandum (Doc. 12) in Support; Defendant's Motion (Doc. 15) for Summary Affirmance and Memorandum (Doc. 15-1) in Support; the Magistrate Judge's Report and Recommendation (Doc. 17); and Plaintiff's Objection (Doc. 18) thereto. For the reasons set forth below, the Court ADOPTS the Magistrate Judge's Report and Recommendation (Doc. 17); Plaintiff's Motion (Doc. 11) is DENIED, and Defendant's Motion (Doc. 15) is GRANTED.

### BACKGROUND

The facts of this case have been sufficiently detailed in the Magistrate Judge's Report and Recommendation (Doc. 17), which the Court now adopts. The Court thus recounts the facts here in summary fashion.[1] Additional facts will be incorporated as necessary in the discussion section.

On June 21, 2015, Charles M. filed an application for disability insurance benefits (DIB) alleging disability beginning on June 28, 2014. AR 25. His claim was denied initially on February 18, 2016 and upon reconsideration on May 11, 2016. *Id*. Charles filed a request for hearing concerning his application for DIB, which was held before the Honorable Susan F. Zapf

---

[1] Consistent with the Magistrate Judge's Report and Recommendation (Doc. 17), references to the pages with the Administrative Record (Docs. 7, 8) will be identified by "AR [page number]."

(ALJ) on January 17, 2018. *Id*. At the hearing, Charles was represented by an attorney. Charles, his wife, and a vocational expert (VE) testified at the hearing. *Id*. ALJ Zapf issued an unfavorable decision on May 7, 2018, finding that Plaintiff had not been under a disability within the meaning of the Social Security Act. AR 35.

In the ALJ's May 2018 decision, she determined Charles had the following severe impairments: degenerative disc disease; carpel tunnel; hypothyroidism; hypertension; affective disorder; and anxiety disorder. AR 27. However, the record was not consistent with a complete inability to work and a significant number of jobs existed in the national economy that Plaintiff could perform based on his age, education, work experience, and his residual functional capacity ("RFC"). AR 35. The ALJ concluded that Plaintiff had the RFC to do the following:

> perform sedentary work as defined in 20 CFR 404.1567(a) except he could stand and walk no more than two hours total in an eight-hour day. He had to be able to stand at his workstation for up to two minutes every 30 minutes to stretch and adjust position. He could work foot controls occasionally with the right lower extremity. He could occasionally climb ramps or stairs, and could not climb ladders, ropes or scaffolds. He could occasionally balance, stoop, kneel or crouch. He could not work with concentrated exposure to temperature extremes and hazards. He was limited to frequent but not constant fingering with the right, dominant hand and frequent but not constant reaching forward and overhead with the right upper extremity. He was limited to unskilled work tasks that could be easily resumed if he had momentary deficits in concentration and attention. He could not do tandem tasks and needed work with no more than occasional changes in work processes and procedures. He could tolerate occasional interaction with coworkers, the public and supervisors.

AR 28-29. On April 4, 2019, the Appeals Council denied Charles's request for review, making the ALJ's May 2018 ruling the Commissioner's final decision. AR 1. Charles filed the instant civil action on May 31, 2019 seeking review of the ALJ's Decision. Doc. 1. On May 14, 2020, the Magistrate Judge entered a Report and Recommendation proposing Plaintiff's Motion for Summary Judgment be denied and Defendant's Motion for Summary Affirmance be granted. Doc. 17, at 21. Plaintiff timely filed an Objection to the Magistrate Judge's findings. Doc. 18.

## LEGAL STANDARD

When reviewing a decision to deny benefits, the Court "will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court does not displace the ALJ's judgment for its own judgment by reconsidering facts or evidence or making credibility determinations. *Id*.; *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). A decision denying benefits does not have to discuss every piece of evidence, but if an ALJ failed to support her conclusions adequately, then remand is appropriate. *Jelinek*, 662 F.3d at 811. If reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## DISCUSSION

In his Objection, which disagrees with nearly all of the Magistrate Judge's findings, Plaintiff asks this Court to "decline to adopt the Magistrate Judge's Report and Recommendation and reverse the decision of the ALJ and remand this matter for an award of benefits, or, in the alternative, reverse the ALJ's decision and remand for additional proceedings consistent with the arguments set forth above." Doc. 18, at 19. In support Plaintiff raises three principal arguments: (1) the ALJ did not properly evaluate Plaintiff's physical RFC or his mental RFC; (2) the ALJ did not adequately assess opinion evidence; and (3) the ALJ's symptom evaluation is not supported by substantial evidence. The Court will address each argument in turn.

### 1.   The ALJ Properly Evaluated Plaintiff's Physical RFC and Mental RFC

Overall, Plaintiff takes issue with several of the ALJ's factual determinations. A reviewing court must determine, based on the administrative record, whether substantial evidence supports an agency's factual determinations. *Biestek*, 139 S. Ct. at 1154. The evidentiary threshold for "substantial evidence" is not high. *Id*. The U.S. Supreme Court has described it as 'more than a mere scintilla.' *Id*. (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Although Plaintiff may have understandably appreciated more detail in some areas of the ALJ's opinion, it was not required to the degree Plaintiff requests. The ALJ needed to "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), as amended (Dec. 13, 2000). As the Magistrate Judge noted, the ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). Here, the Court, like the Magistrate Judge, can trace the ALJ's reasoning as to the RFC determinations.

An RFC is a measure of "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). When determining a claimant's RFC, the ALJ must consider all medically determinable physical and mental impairments, both severe and nonsevere. *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008). An ALJ's RFC assessment must consider both the medical and nonmedical evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171 (7th Cir. 2001). Here, the ALJ found Plaintiff was not capable of performing his past relevant work. AR 34. The ALJ concluded that Plaintiff had the RFC to do the following:

> perform sedentary work as defined in 20 CFR 404.1567(a) except he could stand and walk no more than two hours total in an eight-hour day. He had to be able to

stand at his workstation for up to two minutes every 30 minutes to stretch and adjust position. . . He was limited to frequent but not constant fingering with the right, dominant hand and frequent but not constant reaching forward and overhead with the right upper extremity. He was limited to unskilled work tasks that could be easily resumed if he had momentary deficits in concentration and attention. He could not do tandem tasks and needed work with no more than occasional changes in work processes and procedures. He could tolerate occasional interaction with coworkers, the public and supervisors.

AR 28-29. As such, the ALJ limited Plaintiff to sedentary work with additional limitations.

As to his physical RFC, Plaintiff argues the ALJ failed to "*analyze why* the evidence supported. . . the specific changes in position, fingering, and reaching limitations ascribed to him by the ALJ." Doc. 18, at 2. Therefore, the ALJ committed a reversible error based on SSR 96-8p and Seventh Circuit precedent. *Id*. Plaintiff's objection seems to take issue with the phrase "narrative discussion" from SSR 96-8p. Plaintiff also objects to the ALJ's determinations regarding Plaintiff's concentration and social limitations accounted for in the mental RFC. Overall, Plaintiff's demands for more detailed explanations overlook the standard of articulation for ALJ decisions. The ALJ need not draft a novel to explain her reasoning. She must minimally articulate it, such that a reviewing court can trace her reasoning and her decision can be subjected to meaningful review. *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)).

**a.  Sit/Stand Option**

Plaintiff asserts the Magistrate Judge did not address his central argument that the ALJ erred because she did not explain why it was sufficient for Plaintiff to have a sit/stand option every 30 minutes for up to two minutes at a time as opposed to sit/stand option every 15 minutes. Doc. 18, at 4. However, this objection ignores the Magistrate Judge's precise explanation, "the ALJ did not have to discuss every piece of evidence, [so] she did not have to explicitly *explain why* she did not provide for a sit/stand option of a different frequency and duration." Doc. 17, at

12 (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("[A]n ALJ need not mention every piece of evidence, so long he builds a logical bridge from the evidence to his conclusion.") (emphasis added)).

In further support of his argument, Plaintiff cites to *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017), which the Court finds unpersuasive. Contrary to Plaintiff's interpretation of *Lanigan*, the court did not reverse the ALJ's decision because the ALJ failed to *explain why* he determined "claimant would be off-task 10% of the time as opposed to 5% or 15%." Doc. 18, at 4. The court reversed the decision because the ALJ did not support her 10% determination with s*ubstantial evidence* to build a logical connection between the evidence and the ALJ's conclusion. *Lanigan*, 865 F.3d at 563. In this case, the ALJ's focus on a sit/stand option every 30 minutes was not a completely arbitrary figure chosen by the ALJ like Plaintiff suggests. Furthermore, the percentage to which a person can concentrate may be more difficult to quantify than determining how long a person can sit.

Here, the ALJ supported his sit/stand conclusion with substantial evidence the Court can readily trace. The ALJ concluded due to his pain, fatigue, and drowsiness, Plaintiff needed to be able to stand and walk no more than two hours in an 8-hour workday and be able to stand up from his workstation every 30 minutes for up to 2 minutes. AR 30. Furthermore, ALJ decisions are read as a whole. *Rice v. Barnhart*, 384 F.3d 363, 369 n.5 (7th Cir. 2004). In her decision, the ALJ also stated that in January 2018, Dr. Smith opined that Plaintiff could sit about 30 minutes at one time. AR 33. Although the ALJ did not find all of Dr. Smith's opinions were consistent with the record and objective evidence, she did give weight to his opinions to the extent they are consistent with the adopted RFC. *Id*. Dr. Smith's 30-minute sitting determination is consistent with the RFC. In another section of the opinion, the ALJ discussed Plaintiff's daily activities at

home then again mentioned he should be able to perform sedentary work with a sit/stand option. *See* AR 31. Thus, the Court can trace the path of the ALJ's reasoning between the evidence and her conclusion regarding the sit/stand option. None of Plaintiff's citations to the record in his Objection regarding the stand/sit option change the Court's opinion.

The Court further notes although Plaintiff provides a laundry-list of case citations, here and throughout his brief, it is not immediately clear how many of these cases support his arguments.[2] Inundating the Court with inapplicable caselaw citations is not an effective route to winning one's argument. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

### b.  Obesity

Next, Plaintiff argues the Magistrate Judge incorrectly concluded the ALJ's failure to mention Plaintiff's obesity was a harmless error. Doc. 18, at 5. In his Recommendation and Report, the Magistrate Judge rejected Plaintiff's argument that if the ALJ had assessed his obesity and lumbar pain, then the ALJ would have found Plaintiff needed to stand more frequently to alleviate pain because 'lumbar pain can be worse when seated, and obesity can itself exacerbate musculoskeletal conditions.' Doc. 17, at 13 (citing Doc. 12, at 9). The Magistrate concluded this argument was "mere speculation" because Plaintiff did not cite any record evidence to support his contention. *Id.* (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (holding remand for explicit consideration of claimant's obesity would not affect the

---

[2] *See e.g.*, Plaintiff's citations to *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009); *Garcia v. Colvin,* 741 F.3d 758, 762 (7th Cir. 2013); *Hayes v. Colvin,* 2017 WL 5195878 *2 (N.D. Ill. Nov. 9, 2017); *Hickey v. Berryhill,* 2017 WL 5001417 *4 (N.D. Ill. Nov. 2, 2017) for the proposition that ALJs may not "play doctor." Doc. 18, at 3. Based on the discussion above, the ALJ did not impermissibly "play doctor" in rendering her sit/stand option conclusion without any basis in the record or medical opinions and Plaintiff's argument instead focuses on the ALJ's failure to discuss *why* she did not find a different frequency and duration for the sit/stand option. *See also* the Court's discussion *infra* of Plaintiff's caselaw citations throughout this opinion.

outcome of the case and claimant did not "specify how his obesity further impaired his ability to work, but merely speculate[d] that his weight ma[de] it more difficult to stand and walk").

The Court agrees with the Magistrate Judge that any error in expressly discussing Plaintiff's obesity was a harmless error. In his Objection, Plaintiff concedes "that the evidence does not unequivocally lead to the conclusion that his obesity rendered the sit/stand option included in the RFC assessment unsupported by substantial evidence." Doc. 18, at 6. Yet, Plaintiff urges the Court to find err in the ALJ's failure to consider Plaintiff's obesity because it was "highly relevant" to determining whether the sit/stand option would adequately accommodate Plaintiff. *Id*. "But a failure to explicitly consider the effects of obesity may be harmless error." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). Plaintiff offered no evidence to demonstrate how his obesity further impaired his ability to work, other than asserting it was highly relevant to the sit/stand option. The Seventh Circuit has held, "[a]n ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work." *Rennaker v. Saul*, 820 F. App'x 474, 481 (7th Cir. 2020) (quoting *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) (internal quotation marks omitted)).

Furthermore, contrary to Plaintiff's assertion, *Gentle v. Barnhart,* 430 F.3d 865, 868 (7th Cir. 2005) does not stand for the categorical rule that it is automatically a reversible error if an ALJ fails "to assess the impact of a claimant's obesity on disc and joint disease." Doc. 18, at 6. In *Gentle*, the ALJ had found the claimant was capable of previous work that required standing much or most of the time, which was not sedentary work. *Id.* at 867. The court questioned how the ALJ could have found someone whose disability mainly stemmed from spinal disk disease which was exacerbated by obesity could have been found capable to perform non-sedentary work. *Id.* at 869. Likewise, *Barrett* also involved light as opposed to sedentary work and it does

not stand for the categorical rule that Plaintiff posits. *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir.), *on reh'g*, 368 F.3d 691 (7th Cir. 2004) ("Even if Barrett's arthritis [in her knees] was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as arthritic as she but not both."). Unlike those cases, Plaintiff did not explain how obesity would have impacted his highly restrictive RFC of sedentary work that had additional limitations.

The Court can also infer that the ALJ considered obesity. In the ALJ's decision, she discussed Plaintiff's hypothyroidism and hypertension and cited to B18F/27, a note from Dr. Singh. *See* AR 929. That note focuses on hypothyroidism but also mentions Plaintiff's obesity. In that same paragraph, the ALJ also discussed a note from Dr. Meridian which stated that Plaintiff's conditions were being "treated with aggressive diet, weight loss and caloric medication and exercise." AR 31. While the ALJ did not explicitly use the word obesity, it is clear she considered it.

### c.  Reaching and Fingering Limitations

Plaintiff also disagrees with the Magistrate Judge's determination that "the Court can also trace the path of the ALJ's reasoning between the record evidence and her conclusion that Charles' right hand and right upper extremity limitations were accommodated by a limitation to frequent fingering and reaching forward and overhead." *See* Doc. 17, at 13. Plaintiff's objection ultimately asks the court to re-weigh the evidence by arguing the ALJ should have further restricted Plaintiff's reaching and fingering limitations. The Court declines to do so.

In reviewing his carpal tunnel, the ALJ considered medical evidence, Plaintiff's description of the use of his hands and arms, and his daily activities. This analysis is consistent with the applicable standard in assessing a claimant's RFC. An ALJ must consider medical and

non-medical evidence in the record. *Dixon*, 270 F.3d at 1178. The ALJ highlighted that despite the evidence of carpal tunnel, Plaintiff chose not to undergo surgery, which suggested that the pain was tolerable. AR 30. Citing to exhibit B10F, the ALJ further noted that Dr. Taiwo reported positive Tinel's and Phalen's tests with 4/5 grip strength in the right hand and Plaintiff had full grip strength in his left hand. AR 31. In that same exhibit, Dr. Taiwo noted that Plaintiff had normal grasp and object manipulation ability to fully extend his hands, make fists, and appose fingers. His range of motion in the shoulders, elbows, and wrists was not limited. In another area of the ALJ's decision, the ALJ also noted Dr. Smith's clinical findings of muscle weakness in the forearm and reduced grip strength, but the ALJ ultimately did not give weight to the opinion of Dr. Smith to extent he found Plaintiff could not perform sedentary work.

Regarding Plaintiff's reported symptoms, the ALJ noted they were consistent with an inability to perform no more than sedentary work. Although not specific to the carpal tunnel discussion, in discussing activities that supported Plaintiff's ability to work, the ALJ highlighted his ability to drive a car, ride a four-wheeler, drive a riding mower, and perform household chores. The ALJ also pointed out that there had been no hospital or emergency rooms visits for hand pain since the alleged onset date.

To the extent Plaintiff argues the ALJ did not mention "enough" evidence, the ALJ did not ignore an entire line of evidence and "an ALJ's adequate discussion of the issues need not contain 'a complete written evaluation of every piece of evidence.'" *See Pepper*, 712 F.3d at 362 (internal citations and quotations marks omitted). As such, the ALJ applied the appropriate standard in her consideration of Plaintiff's reaching and fingering limitations and supported her conclusions with substantial evidence.

### d.  Concentration Difficulties and Accommodation

Many of Plaintiff's objections are premised on his declaration that the ALJ did not

provide a "narrative discussion." This particular objection is no different. However, Plaintiff's

interpretation of the words "narrative discussion" throughout his briefs seems to ignore the well-

settled "substantial evidence" standard which requires minimal articulation. *See Knox v. Astrue*,

327 F. App'x 652, 657–58 (7th Cir. 2009) ("The ALJ need not provide a written evaluation of

every piece of evidence, but need only "minimally articulate" his reasoning so as to connect the

evidence to his conclusions."). The Magistrate Judge already reiterated a similar point to Plaintiff

—"Charles loses sight of the fact that the ALJ's Decision need only be supported by 'more than a

mere scintilla' of evidence." Doc. 17, at 15 (quoting *Biestek*, 139 S. Ct. at 1154). Plaintiff

acknowledges this remark in his brief but proceeds to ignore it and continue to persist that the

ALJ did not provide a sufficient "narrative discussion." In disagreeing with the Magistrate's

Judge's conclusion, Plaintiff argues the ALJ did not provide substantial evidence for the RFC

determination and the evidence supported a more restrictive RFC. Doc. 18, at 9-11.

In her decision, the ALJ concluded Plaintiff "was limited to unskilled work tasks that

could be easily resumed if he had momentary deficits in concentration and attention. He could

not do tandem tasks and needed work with no more than occasional changes in work processes

and procedures." AR 29. According to Plaintiff, this determination violates Seventh Circuit

precedent. The Court again disagrees with Plaintiff's interpretation of caselaw and its

applicability to this case. This case is distinguishable from cases where the Seventh Circuit has

found fault in an RFC assuming that work with simple, routine, and repetitive tasks appropriately

accounted for concentration issues. Nor is there a categorical rule "that an ALJ may never

accommodate 'moderate' limitations in concentration, persistence, and pace with only a

11

restriction to simple instructions and tasks." *Lothridge v. Saul*, No. 20-1269, 2021 WL 37503, at

*6 (7th Cir. Jan. 5, 2021). Here, the ALJ added three more restrictions: he is limited to tasks

which "could be easily resumed if he had momentary deficits in concentration and attention;" he

is restricted from tandem tasks; and he can have "no more than occasional changes in work

processes and procedures." AR 29. In this vein, the ALJ determined Plaintiff's ability to perform

all or substantially all of the requirements of sedentary work was further "impeded by additional

limitations." AR 35. Therefore, the ALJ confirmed that the VE testified to jobs in the national

economy for a hypothetical individual with Plaintiff's age, education, work experience, and

residual functional capacity. *Id*. Additionally, "the ALJ explained further limitations were not

established by the record, specifically citing Charles' reported ability to pay bills, handle

finances, make change, and his observed intact memory and concentration." Doc. 17, at 15.

At its core, Plaintiff's objection nitpicks the phrase "unskilled work" in the RFC but

ignores the ALJ's detailed discussions on AR 32-33 regarding Plaintiff's mental conditions and

abilities. In addition to Plaintiff's moderate restrictions in the ability to concentrate, the ALJ also

discussed his mild restrictions in the ability to understand, remember, or apply information, and

his moderate limitations in the ability to adapt or manage oneself. These discussions further

support the ALJ's mental RFC determination. For example, the ALJ observed that "his work

history evidenced no difficulties working with or sustaining basic tasks," "the record fail[ed] to

establish evidence of any significant deterioration in cognitive functioning since the claimant

stopped working," and "Dr. NieKamp concluded that the claimant's 'cognitive functions

appeared to be operating within expected developmental limits.'" AR 32.

It is unclear as to how Plaintiff's citations to AR 32-33, 55, 76, 78, 171-75, 190-97, 354-

56, 378-79, 674, support his argument that he experienced more than "fleeting" concentration

lapses. Aside from his failure to articulate the significance of these pages, only AR 674 appears to potentially support his argument. This a report from Dr. NieKamp on 12/18/2015, in which Charles *reports* "poor focus and concentration," without further explanation, so it is unclear how that contradicts the RFC. Even so, AR 674 is inconsistent with other pages Plaintiff cites, AR 354 and 378, which appear to be self-reports authored by Plaintiff on 11/24/2015 and 4/24/2016, respectively. Notably, in the section titled "check any of the following items that your illnesses, injuries, and conditions affect," Plaintiff did not check the boxes "memory," "concentration," "understanding," and "following instructions." AR 354; 378. Based on the dates of these reports, they were authored before and after Dr. NieKamp's report. Based on these considerations, the Court does not understand why Plaintiff cited these pages or how they strengthen his argument. Regardless, an "ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence." *Pepper*, 712 F.3d at 363. If Plaintiff's argument rests on his subjective complaints located elsewhere in his testimony, the Court will not scour the record to find them. Thus, Plaintiff has not identified any grounds for remand based on the ALJ's mental RFC determination.

### e. Social Interactions

In the ALJ's decision, she concluded Plaintiff has moderate restrictions in his ability to socialize, so the RFC limited him to occasional interaction with coworkers, the public and supervisors. AR 28-29. Plaintiff's brief objection here is another disagreement with the "substantial evidence" standard and a demand for the ALJ to explain why she did not find a greater limitation regarding Plaintiff's social interactions. In disagreeing with the ALJ's conclusion, Plaintiff points to his "temper, easy irritation, mood swings, and isolation" as well as the state agency doctors' opinions' that he "had moderate limitations in accepting instructions

and responding appropriately to criticism from supervisors." Doc. 18, at 13. However, the

Magistrate Judge already precisely addressed these concerns Plaintiff raised.

> The Court agrees with the Magistrate's Judge analysis regarding social interactions.
>
> [Plaintiff] seemingly chooses to ignore what the ALJ explicitly stated in her Decision. She cited Charles' own report in August 2017 that he was able to control his irritability so that it did not affect his relationships; his doctor thought his mood "decent;" his report to Dr. Smith in October 2015 that Paxil helped considerably with his anger issues; his record did not include evidence of evictions, altercations, or severe social isolation; claims representatives described him as cooperative and appropriate; and his reports that he interacted regularly with family, although he said he tended to limit his social contacts with them. Reading the ALJ's Decision as a whole and with commonsense, she most certainly determined Charles could occasionally interact with the public, co-workers, and supervisors in light of such evidence. *See Rice v. Barnhart*, 384 F.3d 363, 369 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole . . . ."); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) ("we give the opinion a commonsensical reading rather than nitpicking at it").

Doc. 17, at 16-17. Plaintiff's continued objection that the ALJ erred by failing to explain why she

did not find greater limitations in the RFC is unavailing. Plaintiff does not articulate what those

greater limitations should have been. Instead, he simply states the ALJ's error was outcome-

determinative because "SSR 85-15 states that the inability to perform the basic mental demands

of unskilled work . . . significantly erodes the occupational base." Doc. 18, at 13. However, none

of Plaintiff's citations to the record are illuminating. *See id.* (citing AR 76-77, 175-77, 195-97,

354-56, 378-79, 516-17, 674). These citations do not contradict the moderate limitations in the

RFC. For example, on AR 197, a state agency physician wrote "client has the ability to relate and

communicate with other and tolerate work pressures. The client[']s adaptive and interpersonal

and cognitive resources are capable of doing one and two step unskilled tasks to the extent of his

physical limitations." As such, Plaintiff has not pointed to any evidence demonstrating he cannot

"perform basic mental demands of unskilled work." Moreover, pointing to evidence the ALJ did

not discuss does not necessarily mean the ALJ did not support her conclusion with substantial

evidence. Like the Magistrate Judge, this Court can trace the path of the ALJ's reasoning and finds the ALJ logically supported her conclusion with substantial evidence. The Court will not re-weigh the evidence even though Plaintiff disagreed with the outcome of the ALJ's decision.

### 2. The ALJ Adequately Assessed Opinion Evidence

In his Objection, Plaintiff claims the ALJ failed to provide "good reasons" for not fully crediting Dr. Smith's opinion that Plaintiff could not perform sedentary work. Doc. 18, at 14. Plaintiff's argument does not add much more than a recitation of the applicable standard and the Magistrate Judge's previous findings on this issue.

Plaintiff does not claim abnormal evidence compelled a finding of disability but he asserts the evidence and Plaintiff's symptoms show the ALJ did not give "good [enough] reasons" for discrediting parts of Dr. Smith's opinion. *Id*. Yet, at the end this argument, Plaintiff asks the Court to award benefits because "Dr. Smith's work-preclusive opinion is well supported by clinical and diagnostic findings." *Id.* at 16. An award of benefits is only appropriate when "all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). This case does not qualify for such extraordinary relief. As discussed below, the ALJ applied the appropriate standard in reviewing Dr. Smith's opinions and "minimally articulate[d] her reasons for rejecting evidence of disability in the form of Dr. Smith's opinions." *See* Doc. 17, at 18 (citing *Clifford*, 227 F.3d at 872).

Pursuant to the "treating physician rule," an opinion from a treating physician regarding the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and *is not inconsistent with the other substantial evidence* in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)

(applicable to claims filed before March 27, 2017); *Jelinek*, 662 F.3d at 811 (emphasis added). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016). When an ALJ does not give controlling weight to the opinion of a treating physician, the ALJ must weigh the opinion in accordance with the factors in 20 C.F.R. §§ 404.1527, 416.927. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Scrogham*, 765 F.3d at 697-98; *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2006). Those factors include 1) examining relationship; 2) treatment relationship, including the length of the treatment relationship and the frequency of examination, and the nature and extent of the treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors brought to the Social Security Administration's attention. 20 C.F.R. §§ 404.1527(c)(2). "[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight[,]" then "the treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh." *Bauer*, 532 F.3d at 608 (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) (internal quotation marks omitted).

Here, the ALJ described the opinions of Plaintiff's treating physician, Dr. Smith, including his December 2016, January 2017, and January 2018 opinions. AR 33. Thereafter, the ALJ described the weight she gave to Dr. Smith's opinions. The ALJ did not give them weight "[t]o the extent Dr. Smith stated the claimant could not sustain a limited range of sedentary work, his opinions are out of proportion to the objective evidence and were given no weight." AR 33. Thus, the ALJ gave Dr. Smith's opinions weight to the extent they are consistent with the adopted RFC, which is highly restrictive. *Id*.

As the Magistrate Judge reminded Plaintiff, the ultimate RFC decision is reserved for the Commissioner. Here, Plaintiff asserts "Dr. Smith was in the best position to opine on [Plaintiff]'s

16

limitations as a result of his impairments, and the ALJ did not rely on any other specific medical opinion in the record." Doc. 18, at 14. However, this assertion ignores the ALJ's discussion of other physicians and reports throughout the ALJ's opinion. An ALJ considers the evidence as a whole including medical and non-medical. Even if Dr. Smith was the best to opine of Plaintiff's impairment, the ALJ was not bound by his opinion. It would run affront to the SSA benefits process and the 404.1527(c)(2), which allows an ALJ to give controlling weight to a treating physician where appropriate or give it less weight depending on the (c)(2) factors. Presumably, Dr. Smith is not an impartial vocational expert like the one who testified at this hearing. Plaintiff's argument also assumes that Dr. Smith considered all of evidence that an ALJ would and did here when Dr. Smith remarked that Plaintiff could not sustain sedentary work. SSA benefits determinations are not reserved to the sole opinion of a physician. Physicians are, of course, often integral to the process of determining whether an individual is disabled within the meaning of the SSA, but they are not the final arbiter on this issue. Otherwise, this system and process would be entirely different.

Even if the Court does not agree with the weight afforded to a treating physician's opinions, the Court's review is "limited to whether the ALJ sufficiently accounted for the factors in 20 C.F.R. § 404.1527" and "built an 'accurate and logical bridge' between the evidence and his conclusion." *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013) (affirming the denial of benefits where the ALJ did not explicitly weigh each factor in discussing a treating physician's opinion, but his decision clearly showed that he was aware of the factors and considered many of them, including the treatment relationship, the supportability of the opinion, and the consistency of the physician's opinion with the record as a whole) (quoting *Elder v. Astrue*, 529 F.3d 408, 415–16 (7th Cir. 2008)).

Like the Magistrate Judge concluded, "the ALJ clearly considered the supportability and consistency of Dr. Smith's opinions. That conclusion is supported by substantial evidence given the ALJ's consideration of Charles' daily activities, his reported symptoms, the efficacy of his medications, and physical consultative examination results." Doc. 17, at 19. Furthermore, despite Plaintiff's insinuation, an ALJ interpreting a claimant's daily activities or subjective symptoms, is not the same as an ALJ interpreting an MRI. *See* Doc. 18, at 14 (citing *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018)). The ALJ also recognized Dr. Smith was a treating source with a long-term treatment history, which is a 404.1527(c)(2) factor. However, she also found inconsistent or contrary evidence in that "the diagnostic and clinical findings of record [were] not as severe as Dr. Smith indicate[d]." AR 34. In sum, the ALJ clearly was aware of and considered many of the (c)(2) factors and built a bridge between the evidence and her conclusions regarding the weight she gave to Dr. Smith's opinions, which disagreed with his ultimate conclusion that Plaintiff could not sustain sedentary work.

### 3. Plaintiff's Remaining Objections

Using a vague heading and short, convoluted remarks, in Plaintiff's last section of objections, he argues the ALJ did not support her "symptom evaluation" with substantial evidence. Doc. 18, at 16-18. The Court will only address Plaintiff's specific and articulated arguments in this section because "perfunctory and undeveloped" arguments are deemed waived. *Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018). Specifically, Plaintiff argues the ALJ erred by (1) failing to address his medication side effects; (2) failing to explain why the activities the ALJ cited were inconsistent with his alleged symptoms; and (3) failing to explicitly discuss Plaintiff's wife's testimony. The Court finds all of these objections unavailing.

### a. Medication Side Effects

Throughout his brief, Plaintiff raises the ALJ's consideration of the side effects of Plaintiff's medications and ultimately asserts "the ALJ's failure to address his medication side effects was erroneous." Doc. 18, at 17. ALJ decisions are read as a whole, and here the ALJ discussed the side effects throughout her opinion. For example, she discussed "due to back pain, fatigue, and drowsiness from medications, he could only stand and walk no more than two hours total in an eight-hour day." AR 30. In another instance, the ALJ acknowledged, "claimant is taking strong pain medications. . . and says his medication makes him tired, but he drives his child to school." AR 31. The ALJ noted Plaintiff admitted the medications reduced his pain levels and relieved mental symptoms. *Id*. The ALJ also found Plaintiff's "drowsiness from medications distract him to the extent he was limited to unskilled work tasks that could be easily resumed if he momentary deficits in concentration and attention." AR 33. Thus, the Court disagrees that the ALJ failed to address the side effects of his medications.[3]

Plaintiff further alleges the ALJ failed by not investigating whether Plaintiff timed his medications so that he could drive his son to school. This objection goes to the fullness of the record, which can be good cause for remanding a case. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). An ALJ has a duty to develop a full and fair record but if a claimant is represented by counsel, then counsel is presumed to have made his best case before the ALJ. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Even a claimant that appeared without counsel at the social security hearing must identify a "significant omission" in order to justify remand, such as medical evidence the ALJ did not consider. *Nelms*, 553 F.3d at 1098. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to

---

[3] By submitting this brief, counsel certified that the factual contentions will have evidentiary support. *See* FED. R. CIV. P. 11(b)(3). This one clearly did not.

warrant a remand." *Id*. (internal quotations marks and citation omitted). Here, other counsel represented Plaintiff at the proceeding, so the ALJ did not have a heightened duty to develop the record that may or may not have included probing into the timing of medications. Even so, Plaintiff's argument is mere speculation because it only posits a hypothetical that Plaintiff may have timed his medications. *See* Doc. 18, at 17 n.3.

Additionally, the Court acknowledges Plaintiff's point that the Seventh Circuit has remarked that "taking 'heavy doses of strong drugs' indicates that the claimant's complaints of pain are likely credible." *See Scrogham*, 765 F.3d at 701 (citing *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (criticizing the ALJ for inferring the claimant was a good actress fooling "a host of doctors and emergency-room personnel into thinking she suffers extreme pain" and inferring medical workers prescribed drugs and other treatment even though they thought she was faking her symptoms). However, contrary to Plaintiff's assertion, the ALJ did not disregard Plaintiff's pain and concentration difficulties as mild and discrete. Due to pain, the ALJ concluded he could not perform physically demanding work but rather, only sedentary work with a sit/stand option. AR 31. The ALJ also concluded he had moderate restrictions in his ability to concentrate due physical and mental symptoms, which required further limitations. AR 33. Just as a diagnosis does not equate to a disability under SSA, taking medicine does not automatically compel a finding of disability. It is relevant to an ALJ's inquiry but taking medicine, on its own, it not outcome determinative. Furthermore, the ALJ did not solely rely on his medications in concluding that Plaintiff's statements were not fully consistent with a complete inability to work.

### b.  Daily Activities and Subjective Symptoms

Plaintiff further claims the ALJ failed to explain why Plaintiff's daily activities "were inconsistent with his alleged problems with repetitive standing and walking, manipulative

activities, and concentration limitations." Doc. 18, at 17. Plaintiff further claims the ALJ violated

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) because she drew an "explicit link"

between Plaintiff's daily activities and his ability to work. *Id*. But "[m]isreading the record and

misreading the ALJ's opinion are not the routes to securing a remand." *Migdalia M v. Saul*, 414

F. Supp. 3d 1126, 1136 (N.D. Ill. 2019) (internal citations omitted). The Court disagrees with

Plaintiff's application of *Bjornson* and attempt to equate different activities.

Unlike *Bjornson*, "the ALJ made clear that Charles' 'choice of elective activities'

undermined the extent to which he alleged his pain interfered with his ability to work as she

stated 'the undersigned cannot conclude that he is entirely precluded from all work activities due

to problems with pain.'" Doc. 17, at 21-22. The ALJ discussed Plaintiff's activities in the context

of her evaluation as to the intensity, persistence, and limiting effects of Plaintiff's symptoms.

Further, it is clear the ALJ's determination did not rest simply on the fact that Plaintiff drove an

ATV or rode a lawn mower. Nor did Plaintiff describe these as events which led him to seek

medical care. As to Plaintiff's comment that he was able to ride an ATV with the option of

breaks, regardless of how many breaks one took riding an ATV, there are still vibrations one

would feel and other potential pain complications. Plaintiff admitted as much in his testimony

that he cites. *See* AR 76. It was not impermissible for the ALJ to mention Plaintiff's elective

activities. To the extent Plaintiff argues he could re-adjust at his own choosing during these

activities, the ALJ added a limitation to sedentary work that would allow him to stand and re-

adjust his position every 30 minutes.

As to Plaintiff's comment that the ALJ did not "properly address [his] qualifications"

about riding an ATV, the ALJ clearly considered those qualifications as they were embedded in

Plaintiff's testimony and the ALJ highlighted Plaintiff "said he pays for his activities." AR 29.

The Court does not see how Plaintiff's citation to AR 76 encompassing testimony from the social

security hearing supports his position. On that page of testimony, the following exchange occurs:

> Q: All right. You've described some activities that you do and then you mentioned *paying for it* afterwards, but give us some more detail about what do you mean by paying for it afterwards?
> A: Like if we go for a four-wheeler ride and just – I've got a nice four-wheeler. It's independent suspension and stuff, so it absorbs a lot of that but *you still feel some of that when you're riding*. So if we go for, you know, an hour ride, or whatever, and come back I'll spend the rest of the day in – in the bathtub soaking, take a pain pill and I'll go lay down for the rest of the night and sometimes into the next day.

*Id*. (emphasis added). Even if Plaintiff "paid for it later" after riding an ATV, he still chose to

continually engage in that activity at least up to an hour based on this testimony. Considering the

highly restrictive RFC, it is unlikely that Plaintiff would be engaging in full-time work akin to

the physical nature of riding an ATV and its after-effects specific to Plaintiff. It is not

unreasonable that the ALJ included this fact when discussing the severity and persistence of his

symptoms. Again, the ALJ's opinion does not hinge on Plaintiff's four-wheeler activity as she

only mentioned it briefly. Thus, the ALJ did not impermissible equate an ill-advised activity to

the ability to work full-time as Plaintiff suggests.

To the extent Plaintiff again objects to the ALJ's analysis of his subjective allegations, an

ALJ's analysis of a claimant's allegations does not have to be perfect. *Migdalia*, 414 F. Supp. 3d

at 1135 (citing *Shideler*, 688 F.3d at 312). It is still permissible for an ALJ to examine a

claimant's daily activities in assessing whether 'testimony about the effects of his impairments

was credible or exaggerated.' *Id.* (quoting *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)).

"[A]lthough an ALJ may not ignore a claimant's subjective reports of pain simply because they

are not fully supported by objective medical evidence, discrepancies between objective evidence

and self-reports may suggest symptom exaggeration." *Getch v. Astrue*, 539 F.3d 473, 483 (7th

Cir. 2008).

The Court finds the ALJ properly considered the SSR 16-3P factors. As the Magistrate Judge highlighted, "SSR 16-3p directs the ALJ to focus on the 'intensity and persistence of the applicant's symptoms.'" Doc. 17, at 19 (quoting *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016)). Pursuant to SSR 16-3p, all evidence, "including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at 20. Additionally, the factors in 20 C.F.R. § 404.1529(c)(3) are to be considered. *Id*. These factors include: "claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms." *Id.* (citing SSR 16-3p, at *7-8).

As to objective medical evidence, the ALJ highlighted "medical evidence pertaining to Charles' back, wrist, neck, and hands. She pointed out that Charles testified his pain averaged 3-4/10 with medication and that he reported in February 2017 that he was able to control his pain somewhat with his current treatment regimen." Doc. 17, at 20 (citing AR 31). She acknowledged Plaintiff's "multiple treatment modalities," but then discussed the absence of objective severe pain signs. She also pointed out there were no hospital or emergency room visits for back or hand pain after the alleged onset date and he did not require an assistive device. She described how "he took strong medications which he said made him tired yet he drove his son to school, his pain medications reduced his pain level, and his daily activities included riding a four-wheeler with his son, driving a riding mower, folding clothes, vacuuming, cooking, taking out the trash, and helped his son with his homework." *Id*. In the aggregate, these were appropriate considerations. In doing so, the ALJ also discussed perceived inconsistences between Plaintiff's

daily activities and the medical evidence. Thus, the ALJ properly assessed the extent to which

Plaintiff's subjective allegations were consistent with and supported by other record evidence.

### c. Plaintiff's Wife's Testimony

Finally, Plaintiff objects to the Magistrate Judge's finding that the ALJ did not err by

failing to explicitly discuss the testimony of Plaintiff's wife because it was essentially redundant.

In the beginning of the ALJ's decision, she noted that Plaintiff's wife testified but did not further

discuss the testimony or its credibility. This case is different than *Garcia*, which Plaintiff cites,

where an ALJ gave a claimant's fiancé's testimony only "some weight, recognizing the potential

for bias." *Garcia*, 741 F.3d at 761. The Seventh Circuit criticized the ALJ's reliance on assumed

bias to discount the fiancé's testimony but did not expressly find reversible error on this point.

Regardless, the Court agrees with the Magistrate Judge's basis for rejecting this objection:

> Though Charles assigns error to the ALJ's failure to explicitly consider his wife's
> testimony, the portions of her testimony he highlights are essentially redundant of
> Charles' own statements and testimony. Therefore, because the ALJ sufficiently
> considered Charles' statements and testimony, the ALJ did not err in failing to
> explicitly discuss his wife's testimony. *See Carlson*, 999 F.2d at 181 (explaining
> that the ALJ's failure to explicitly address the claimant's wife's testimony did not
> amount to a fatal failure to consider an entire line of evidence where the ALJ
> explicitly addressed the claimant's testimony and the wife's testimony was
> "essentially redundant").

Thus, the Court finds no reversible error based on the failure to include this testimony.

In conclusion, on this record, the Court finds Plaintiff's assertions of error unconvincing.

The Court concludes the ALJ applied the correct legal standards and supported her decisions

with substantial evidence. As the Seventh Circuit succinctly stated in *Schreiber*, "the ALJ's

decision was not perfect. But it was supported by substantial evidence, and [the Court] must

nevertheless affirm the denial of benefits even if 'reasonable minds could differ concerning

whether [Plaintiff] is disabled.'" 519 F. App'x at 962 (quoting *Elder*, 529 F.3d at 413).

## CONCLUSION

For the reasons set forth above, the Court adopts the Magistrate Judge's Report and

Recommendation (Doc. 17). Plaintiff's Motion (Doc. 11) for Summary Judgment is DENIED,

and Defendant's Motion (Doc. 15) for Summary Judgment IS GRANTED. The Commissioner's

decision to deny benefits is AFFIRMED.

The Clerk is directed to close the case.

Signed on this 1st day of March, 2021.

<u>s/James E. Shadid</u>
James E. Shadid
United States District Judge